IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

VICKIE LYNN WEBB                                                 PLAINTIFF

V.                         NO. 4:18CV00522 BSM/PSH

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION[1]                    DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Vickie Lynn Webb, applied for disability benefits on April 20, 2015, alleging a disability onset date of December 31, 2014. (Tr. at 37). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Webb's claim. (Tr. at 45). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Webb has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

## II. The Commissioner's Decision:

The ALJ found that Ms. Webb had not engaged in substantial gainful activity since the alleged onset date of December 31, 2014. (Tr. at 39). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Webb had the following severe impairments: diabetes, COPD, osteoarthritis, pulmonary hypertension, and obesity. *Id*.

The ALJ found that Ms. Webb's impairment did not meet or equal a listed impairment. (Tr. at 40). Before proceeding to Step Four, the ALJ determined that Ms. Webb had the residual functional capacity ("RFC") to perform work at the sedentary level, with limitations. *Id*. She could occasionally crawl, bend, stoop, kneel, and crouch. *Id*. She should avoid working around moderate amounts of respiratory irritants such as dust, fumes, strong odors, or extreme changes in temperature or humidity. *Id*.

The ALJ next found that Ms. Webb was unable to perform her past relevant work. (Tr. at 44). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Webb's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 45). Therefore, the ALJ found that Ms. Webb was not disabled. *Id*.

## III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Webb's Arguments on Appeal

Ms. Webb contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ improperly ignored the opinion of her treating lung doctor and that the Appeals Council should have considered evidence submitted after the hearing decision. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Webb suffered from pulmonary hypertension which resulted in occasional shortness of breath. However, on October 18, 2016, when she presented to Dr. Ladley Abraham, a pulmonologist, she had normal spirometry, normal lung volume, and normal diffusion. (Tr. at 487). A lack of clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). It should be noted that Webb was an everyday smoker for years, and her doctors all encouraged her to quit to give her lungs a chance to improve. (Tr. at 15, 475,

3

477, 482, 487). The ALJ observed that Ms. Webb claimed she quit smoking, but notes from October 2017 show she still smoked every day. (Tr. at 19, 41). *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders).

In 2017, Webb's lungs were clear at her visits, and she said she was feeling better. She said she was able to walk longer distances. (Tr. at 477). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). While Ms. Webb didn't exercise (in spite of recommendations to lose weight), she was able to do activities of daily living. (Tr. at 252-259, 480). Webb also said that extra oxygen treatment at night was helpful. (Tr. at 65). She was stable with medication and her oxygen level was 98%. (Tr. at 477). Treatment was conservative.

Dr. Abraham filled out a medical source statement on July 6, 2017. He opined that Ms. Webb was limited to less than sedentary work and would miss work more than three times a month. (Tr. at 516-519). He also said she must avoid exposure to pulmonary irritants. (Tr. at 518). The ALJ gave Dr. Abraham's opinion little weight. (Tr. at 43). Ms. Webb takes issue with this.

The ALJ said that Dr. Abraham's opinion was inconsistent with the record. Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Indeed, the record showed mild conditions, improvement with treatment, and minimal limitations on activities of daily living (confirmed in the function report Ms. Webb filled out). (Tr. at 252-259). And Dr. Abraham's opinion was a short checkbox form with no reference to objective evidence. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and

4

provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Finally, the ALJ *did* include Dr. Abraham's restriction on exposure to pulmonary irritants in the RFC.

Furthermore, Dr. Abraham's opinion contradicted the opinion of consultative examiner Garry Stewart, M.D. (Tr. at 356-363). Although Ms. Webb complained of shortness of breath to Dr. Stewart, breath sounds were normal upon exam, and he found no limitations based on her lung condition. *Id*. While Ms. Webb argues that the 2015 exam was too remote in time, no records regarding her lung condition showed significant deterioration afterwards. Indeed, she seemed to improve. So the weight given to Dr. Abraham's opinion was appropriate.

Ms. Webb contends that records submitted after the hearing decision should have been considered by the Appeals Council.[2] After surgery for a right knee meniscus tear, which occurred after the hearing, Ms. Webb said her pain was much improved. (Tr. at 21). A month after surgery, Ms. Webb complained of pain, but she had near full range of motion in her knee. (Tr. at 19-20). She was continued on medication and advised to lose weight and resume low impact activity. (Tr. at 15-21). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Also, new evidence from Dr. Abraham stated that Ms. Webb was "doing reasonably well," and that he strongly recommended she quit smoking, lose weight, and exercise. (Tr. at 13-15). This evidence does not demonstrate serious deterioration, aggressive treatment, or functional restrictions that would have presented the Appeals Council with reasons to overturn the ALJ's decision.

---

[2] To be considered by the Appeals Council, new evidence must be more than merely cumulative of other evidence in the record, and it must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). The Appeals Council reviewed the new records but decided they did not suggest that the ALJ's decision should be disturbed.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Webb was not disabled. The ALJ gave proper weight to the opinion of Dr. Abraham, and the Appeals Council did not err in its consideration of new evidence. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 9th day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE